## Costopoulos v. Gibboney

*Lawrence S. Markowitz,* for plaintiff.
*Calvin R. Koons, deputy attorney general,* for defendants.

SPICER, *P.J., 51st Judicial District, specially presiding,* December 2, 1988 — This case has been pending since February 23, 1979.[1] Files have grown and will, no doubt, prove to be everlasting monuments to skill at unearthing fascinating facts.

For reasons that might escape all but the most perspicacious, defendants waited until quite recently to seriously try to halt the proceedings. The first effort resulted in failure. On May 23, 1988, the

1. The complaint, however, was filed on November 21, 1985.

undersigned denied motions for summary judgment. However, as the accompanying opinion pointed out, many of the defendants' agruments went beyond the scope of the record. The court, therefore, discussed only peripherally such matters as immunity and the effect of advice of counsel.

Defendants hurried to rectify the oversight by requesting permission to amend. After permission was granted, defendants filed a second amended answer and repeated allegations that individual defendants were acting in their capacity as police officers and that all actions taken by them were within the scope of employment. They say they exercised their best judgment and discretion as police officers and filed charges only after consulting with two district attorneys and fully disclosing the results of their investigation. They allege that neither had reason to believe that either attorney had an interest in the outcome of the case, and that both attorneys advised that criminal action was justified. In fact, Perry County's district attorney prepared the complaint.

New matter contains other allegations which are presently subject to review. These are:

(78) Defendants violated no clearly established constitutional right of plaintiff and are therefore immune from money damages under 42 U.S.C. §1983.

(80) Plaintiff alleges that he was arrested on June 11, 1977, and that on June 29, 1977, 11 of the 12 criminal counts against him were dismissed.

(81) He further alleges that the dismissal was affirmed by the Superior Court on February 15, 1978, and that allocatur was denied on May 18, 1978.

(82) Plaintiff did not afford the notice required by 42 Pa.C.S. §5522.

(83) Plaintiff's action was not commenced until February 23, 1979, and is therefore barred pursuant to 42 Pa.C.S. §5522.

(91) Under all the circumstances, it would contravene public policy to impose liability on defendants as this would inhibit police discretion in investigating and charging criminals.

(92) Defendants are entitled to official immunity from suit for their actions.

(93) Defendants are entitled to derivative prosecutorial immunity from suit for their actions.

Plaintiff has filed for judgment on the pleadings. In fact, he has separate motions for each of the paragraphs. Consideration of a motion for judgment under Pa.R.C.P. 1034 is confined to the pleadings themselves. Review is akin to ruling on a demurrer to all allegations. The manner in which plaintiff has filed makes his motions strikingly similar to motions to strike, because we deal with one paragraph at a time.

Defendants have filed for summary judgment, which under Pa.R.C.P. 1034, encompasses the entire record.

Both sets of motions must be examined in terms of applicable common-law tort principles and also those pertaining to federal, 42 U.S.C. §1983, civil rights actons. They then can be further categorized as involving causes of action, immunity, and limitations. Some principles are common to both federal and state actions, others only to one or the other.

Rather than discussing the motions separately, we will combine them into appropriate categories by subject matter.

(1) *Cause of Action* — Plaintiff's request for judgment as to allegations of paragraph 78 are well taken. Plaintiff has contended he was subject to arrest and prosecution without probable cause be-

ing present. An arrest without probable cause violates both the Fourth and Fourteenth Amendments. *Monroe et al. v. Pape et al.,* 365 U.S. 67, 5 L.Ed.2d 492, 81 S. Ct. 473 (1961); *Malley and Rhode Island v. Briggs,* 475 U.S. 335, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986).

(2) *Statute of Limitations* — 42 Pa.C.S. §5522 establishes requirements in cases of suits against the commonwealth or officers of any governmental unit. Section 5522(a)(21) requires notice within six months by any person about to commence any civil action or proceeding "under Chapter 85 (relating to matters affecting governmental units) or otherwise." Subsection (2) provides that failure to provide notice requires dismissal, unless the court shall excuse non-compliance upon showing a reasonable excuse for failure.

Plaintiff argues that this subsection applies only to personal-injury suits. The form of notice would bear out this interpretation. Subsection (a)(1)(iii), for example, requires "the date and hour of the accident." Subsection (iv) requires the location, and (v) the name and residence of any attending physician.

Although the words "or otherwise" seem to expand the applicability of the notice requirement to situations involving more than personal injury, the notice itself is geared to accidents and the ability to investigate them.

We think plaintiff is correct in his argument that the notice requirements are inapplicable to this case. Commonwealth could not have been harmed by failure to notify and we think nine years is too long to wait to bring up the issue.

42 Pa.C.S. §5522(b)(1), however, is a different matter entirely. It establishes a statute of limitations of six months for:

"(1) An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter."

Plaintiff argues that this limitation refers only to negligence cases and not to willful torts. However, a close reading of cases decided indicates otherwise.

In *Lantz v. Lutz*, 8 Pa. 405 (1848), the Supreme Court interpreted the statute's forerunner, Act of March 21, 1772, 1 Sm.L. 364 §7, 42 P.S. §1017, repealed[2] as applying "against the consequences of involuntary trespass, not against the consequences of willful misconduct." *Lantz* at 406. In that case, a constable had a warrant for the arrest of a putative father and allowed him to go. The court held that a mother had grounds to sue the constable beyond the six-month limit because the constable's actions were not "in obedience to his warrant, but in open contempt of it." *Lantz* at 407.

Similarly, a constable was exposed to liability beyond the six-month period for actions characterized ass willful and malicious defamation, but not for negligent infliction of emotional distress. *Reuben v. O'Brien,* 299 Pa. Super. 372, 445 A.2d 801 (1982).

In that case, a district justice issued a writ of execution. After service, the debtor went to the district justice and paid the amount in full. Despite payment, the constable posted a notice of sale on the debtor's mailbox. The debtor alleged the action was done for the purpose of exposing her to contempt and ridicule.

The Superior Court said:

"According to these averments, if they be factu-

2. The statute is quoted in *Reuben v. O'Brien,* 299 Pa. Super. 372, 377, 445 A.2d 801, 803 (1982).

ally correct, appellee exceeded the authority of his office and under cover thereof committed an intentional tort." 299 Pa Super. at 377, 445 A.2d at 803.

The Superior Court also said that the statue is not waivable, does not have to be preserved through pleading, and is an absolute bar to actions covered by the statute. Three wrongful discharge cases serve to illustrate. *Fleming et al. v. Rockwell et al.,* 93 Pa. Commw. 91, 500 A.2d 517 (1985), (action in mandamus); *Kelly v. City of Philadelphia,* 552 F. Supp. 574 (1982), affirmed 725 F.2d 668; *Clyde v. Thornburgh,* 533 F. Supp. 297 (1982).

Thus, the key to applicability lies not in whether an action was intentional or negligent but whether done "in the execution of his office." Statute, *supra.*

We think the entire recored clearly establishes that individual defendants acted within the scope of their duties. They conducted an investigation, consulted with the district attorney, and filed a complaint. After a district justice issued a warrant, they executed it.

The record clearly shows they acted pursuant to their duties as state policemen at all times. The arrest was made pursuant to the warrant, not "in contempt of it."

Defendants are, therefore, entitled to judgment on their common-law, state claims. However, the statue cannot be applied to the civil rights action. *Felder v. Casey,* _ U.S. _, 101 L.Ed.2d 123.

(3)*Immunity* — Defendants clearly do not enjoy absolute immunity for civil rights purposes. *Malley and Rhode Island v. Briggs, supra.* We also find they do not enjoy such immunity for state action.

In *Cerino v. Township of Palmer,* the Superior Court summarized the Supreme Court's decision in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978), as follows:

"[T]he Supreme Court of Pennsylvania vacated the dismissal order as to the commonwealth because the doctrine of sovereign immunity had been abrogated by that court in *Mayle v. Pa. Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), and vacated as to the named state officials and remanded, holding that 'the liability of the individual [defendants] should not have been analyzed solely on the basis of their status as employees of the commonwealth.' *DuBree, supra,* 481 Pa. at 543, 393 A.2d at 294. The court noted that, in recent cases, immunity of various kinds had not been granted when it was determined that the policy underlying it would not thereby be advanced. The majority stated, 'Several times in recent years we have declined to follow easily applied but unjust doctrines in favor of rules which, though requiring case-by-case determinations, more often produce equitable results.' The *DuBree* court then declared that, in each case where immunity is asserted, an examination is required as to whether the considerations underlying official immunity would be effectively advanced by allowing that doctrine to bar the plaintiff's suit.

"The basic governing principle was stated by the *DuBree* court as follows: 'Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted by in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recovery is unjustified.' Although *DuBree* has now restricted grants of official immunity to a case-by-case basis, we believe that, where the defense of immunity from suit is asserted by or on behalf of any public servant, the threshold inquiry, as in pre-*DuBree* cases, must concern 'the nature of his

duties, the importance of his office, and particularly whether of not he has policy-making functions.'" *Cerino v. Township of Palmer,* 265 Pa. Super 1, 5-6, 401 A.2d 770, 772 (1979). (footnotes omitted)

Applying the test, Superior Court held that a township engineer enjoyed no immunity because he made no policy decisions.

Obviously, state police do not have policy-making power. However, judgment is also relevant. *Township of Bensalem et al. v. Press,* 93 Pa. Commw. 235, 501 A.2d 331 (1985) (zoning officer has no discretion and therefore no immunity.)

The reason for granting immunity in policy-making and judgment cases is that (a) obviously there are no fixed standards for the exercise of discretion (otherwise, it wouldn't be discretion), and (b) we don't want to discourage the exercise of discretion and judgment.

The threat of liability would have a chilling effect on decision making by those who should be free to make decisions. The Supreme Court spoke of weighing policy reasons for immunity against the right of redress. There are important reasons why we should not inhibit those charged with the responsibility of enforcing the law.

Police must certainly exercise judgment in bringing prosecutions. We pointed out in our May opinion the public policy in encouraging diligent efforts to bring the guilty to justice. It is our opinion, therefore, that both the state and federal actions are governed by qualified immunity. Such immunity is stated as:

"[T]he question is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the application for

the warrant was not objectively reasonable, because it created the unnecessary danger of unlawful arrest." *Malley and Rhode Island v. Briggs,* 475 U.S. 335, 89 L.Ed.2d 271 (1986).

It also has been stated that qualified immunity is available unless an officer "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. . . ." *Harlow v. Fitzgerald,* 457 U.S. 800, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982).

As *Harlow* points out, disputed facts are best left for juries. However, the court pointed out also that pretrial disposition saves officials from distraction from duties, reduces inhibition of discretionary action and also reduces the possibilty that able people will be deterred from seeking public service.

Pretrial disposition is permitted, even in advance of discovery. *Anderson v. Creighton,* 483 U.S. __, 97 L.Ed.2d 523 (1987).

We think the objective test espoused by *Harlow* satisfies our Supreme Court's decision in *DuBree.* Each case is decided on its merits and not merely because of defendants' status as policemen.

Applying the test to the instant case, it seems fairly clear that a reasonable police officer could have thought the prosecution proper. We pointed out that *Everett et al. v. City of Chester et al.,* 391 F. Supp. 26 (E.D. 1975), police were immune when the district attorney primarily brought the charges. Defendants began their investigation at Mr. Rehkamp's request. They filed the charges at his suggestion. The objective test is obviously met.

## ORDER OF COURT

And now, December 2, 1988, plaintiff's motion for judgment on the pleadings is granted as to the allegations of paragraph 78. It is denied as to all other paragraphs. Defendants' motion for summary judgment is granted as to the state action on the basis of both the statute of limitations and qualified official immunity. Defendants' motion is granted to the Civil Rights Act action, 42 U.S.C. §1983, on the basis of qualified official immunity.